UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GREGORY L. ELEY, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 1:04-CV-416-TS |
| v. | ) |
| | ) |
| JAMES HERMAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Gregory L. Eley, Sr., a *pro se* prisoner, was granted leave to file a second amended complaint. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Colley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Eley's second amended complaint again alleges that, while he was a pretrial detainee, he was denied the right to practice his religion in violation of the First, Eighth, and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*.

I.

Mr. Eley names three defendants: Sheriff James Herman, Jail Commander Thomas Hathaway, and Chaplin Richard Sievers. Sheriff Herman is alleged to have created the policy, custom and tradition which denied Mr. Eley the right to practice his Islamic religion and which denied him equal protection by permitting Christian inmates to practice their religion. Mr. Eley alleges that Sheriff Herman is the ultimate and final authority in the creation of policy at the jail. Mr. Eley alleges that Jail Commander Hathaway and Chaplin Sievers acted in accordance with these policies. Sheriff Herman is also alleged to have enforced these policies and that enforcement would have necessarily prevented the other two defendants from affording Mr. Eley the right to practice his Islamic faith. Based on the facts alleged in this complaint, only the Sheriff could be liable for abridging Mr. Eley's Constitutional rights. Therefore Jail Commander Hathaway and Chaplin Sievers will be dismissed.

II.

Mr. Eley alleges that because the jail was crowded, he was unable to prostrate himself for prayer. Specifically, he alleges that he was housed with two other inmates in a two person cell and that one of the three of them slept on the floor. He also alleges that inmates slept on the floor of the day room. Though these conditions may have been distracting and though they may have complicated his efforts to find a place to pray, the mere housing of inmates under these conditions did not inherently prevent him from either prostrating himself or praying. The complaint does not allege, and it would not be reasonable to infer that, the jail was so crowded that it was impossible for other inmates to have briefly moved to accommodate his prayer. Therefore it was not crowding which prevented his prayer. If Mr. Eley was unable to pray because other inmates actively or passively interfered with his efforts to prostrate himself, this would not be a basis for finding liability caused by crowding. Therefore these claims will be dismissed.

### III.

Mr. Eley alleges that he was denied Jum'ah (Friday communal worship) and a copy of the Qur'an even though Christians were permitted communal worship and Bibles. He alleges that these two events violated his rights under the First, Eighth, and Fourteenth Amendments as well as RLUIPA, 42 U.S.C. § 2000cc *et seq.*

### A.

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison regulation or policy that might otherwise

3

unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988). Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Whitley v. Albers*, 475 U.S. 312, 321–322 (1986) (citations, ellipsis, and quotation marks omitted). "The 'free' exercise of religion thus is rather a misnomer in the prison setting." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988). Nevertheless, giving Mr. Eley the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, the allegations that he was denied Jum'ah and a copy of the Qur'an both state claims for monetary damages for a violation of the First Amendment free exercise clause.

B.

The Eighth Amendment's prescription against cruel and unusual punishments applies only to persons convicted of crimes, therefore the Eighth Amendment claims will be dismissed.

C.

The rights of pre-trial detainees are derived from the Fourteenth Amendment due process clause, but "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments" is the same. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). A violation of the Eighth Amendment cruel and unusual punishments

clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Communal worship and religious literature are not among the minimal civilized measure of life's necessities encompassed by the Eighth Amendment. Neither are they encompassed by the Fourteenth Amendment due process clause and therefore those claims will be dismissed.

D.

The Fourteenth Amendment equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions.

> Within these constraints (compatibility with the legitimate penological demands of the state) the prison must afford all inmates a reasonable opportunity to practice their religion. In providing this opportunity, the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted). Giving Mr. Eley the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, the allegations that he was denied Jum'ah and a copy of the Qur'an while Christians were permitted communal worship and access to the Bible both state claims for monetary damages that he was denied qualitatively comparable treatment in violation of the Fourteenth Amendment equal protection clause.

E.

The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>     (1) is in furtherance of a compelling governmental interest; and
>     (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The statute does not define substantial burden, but in a case interpreting the land use provisions of RLUIPA, the Seventh Circuit has stated that "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). The statute defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Nevertheless, a substantial burden may be justified if it is the least restrictive means of furthering a compelling governmental interest.

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.
>     . . .
> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Cutter v. Wilkinson*, 125 S. Ct. 2113, 2123 (2005).

Giving Mr. Eley the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, the allegations that being denied Jum'ah and a copy of the Qur'an placed a substantial burden on his religious exercise both state claims for monetary damages for violations of RLUIPA, 42 U.S.C. § 2000cc-1(a).

## IV.

Pursuant to 42 U.S.C. § 1997e(g)(1), a defendant may waive the filing of an answer in prisoner litigation. Though there have already been two answers filed in this case, for clarity and uniformity, the defendant should file an answer to the second amended complaint (if for no other reason than to avoid any possible confusion over what, if any, affirmative defenses are being asserted).

Nevertheless, a review of the two previous answers filed in this case demonstrates confusion with both this court's two prior screening orders and the local rules of court. Both screening orders directed the sole remaining defendant to "respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which Gregory Lynn Eley, Sr. has been granted leave to proceed in this screening order." Rather than comply with that order, all of the named defendants (even ones who had been dismissed) responded to all of Mr. Eley's claims (even ones which had been dismissed). In addition, rather than comply with Local Rule 10.1, which states that "[e]xcept in *pro se* cases, a responsive pleading . . . shall recite verbatim that paragraph to which it is responsive . . . ," the defendants recited each paragraph verbatim anyway. While neither of these errors were prejudicial, neither were they necessary. Once again the sole remaining defendant

7

will be ordered to respond only to those claims for which the plaintiff has been granted leave to proceed in this opinion.

V.

For the foregoing reasons, the court:

(1) **GRANTS** Gregory L. Eley, Sr., leave to proceed against Sheriff James Herman in both his individual and official capacities for monetary damages, for violations of the First Amendment free exercise of religion clause, the Fourteenth Amendment equal protection clause, and RLUIPA (42 U.S.C. § 2000cc-1) for denying him Jum'ah and a copy of the Qur'an;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Jail Commander Thomas Hathaway and Chaplin Richard Sievers;

(4) **DIRECTS** the clerk to transmit the summons and USM-285 for Sheriff James Herman to the United States Marshals Service along with a copy of this order and a copy of the second amended complaint;

(5) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Sheriff James Herman; and

(6) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Sheriff James Herman respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which Gregory Lynn Eley, Sr. has been granted leave to proceed in this screening order.

SO ORDERED on October 25, 2005.

        <u>  S/ Theresa L. Springmann  </u>
        THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT