**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| GREGORY L. ELEY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:04-CV-416-TS |
| | ) | |
| JAMES HERMAN, in this individual | ) | |
| capacity, and in his official capacity as the | ) | |
| SHERIFF OF ALLEN COUNTY | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**A. Background**

The Plaintiff, Gregory L. Eley, was a federal prisoner at the Allen County jail. Being a Muslim, he requested a Koran from the jail chaplain. He also asked the jail commander for permission to observe during a lunch time an obligatory Muslim Friday prayer service, Jumu'ah. As to the Plaintiff's first request, the chaplain did not have a Koran to give and was not able to get one from the local Imam. Likewise, noting that the Plaintiff was free to pray at any time, the jail commander denied his request for special prayer service

On November 5, 2004, the Plaintiff, while still incarcerated but in a different facility, sued the Allen County Police Department, Sheriff James Herman, and Chaplain Richard Sievers under 42 U.S.C. § 1983. On March 7, 2005, the Court screened the Plaintiff's complaint in accordance with 28 U.S.C. § 1915A and allowed him to proceed against Chaplain Sievers only on his First Amendment free exercise of religion claims and his Fourteenth Amendment equal protection claims related to his request for a Koran and religious worship.

On June 3, 2005, and then on October 12, 2005, the Court allowed the Plaintiff to amend his

Complaint. In the end, the Plaintiff was given leave to proceed against Sheriff Herman, in both his individual and official capacities, on his First Amendment free exercise of religion claims, his Fourteenth Amendment equal protection claims, and a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.

On January 25, 2006, Sheriff Herman moved for summary judgment on all the Plaintiff's claims. The Plaintiff, who is not represented by counsel, responded to the motion on April 5, 2006, and Sheriff Herman filed a reply on April 21, 2006. In this Opinion and Order, the Court will address Sheriff Herman's motion.[1]

**B. Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] In his Response to Sheriff Herman's motion for summary judgment, the Plaintiff brings up previously dismissed claims: lack of space to prostrate for prayer and having to eat cold lunches during Ramadan. Since these claims have not been reinstated, they are not within the purview of this Order.

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some

metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## C.  Material Facts

Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiff's favor, the facts assumed to be true for purposes of ruling on Sheriff Herman's Motion for Summary Judgment are as follows[2]:

---

[2] In his Response, the Plaintiff questioned the validity of the affidavits presented by Sheriff Herman because they were not notarized. The Federal Rules of Civil Procedure do not require notarized affidavits, but only that they be attested by competent persons, made on personal knowledge, and set forth such facts as would be admissible in evidence. *See* Fed. R. Civ. P. 56(e). Since the affidavits submitted by Sheriff Herman satisfy these requirements, the Court may properly rely on the information set out in them.

The Plaintiff, a Muslim from birth, was a federal prisoner held from August 2003 until October 2003 at the Allen County Jail. (Eley Aff. 1.)

James Herman is Allen County's Sheriff. In this position, he is in charge of the Allen County Jail and is responsible for establishing and enforcing the policies at the jail. Sheriff Herman does not have an office at the jail and does not have day-to-day contact with the inmates. (Herman Aff.)

Richard Sievers is the jail's chaplain. Sievers is not employed by the jail but receives his salary from the Allen County Jail Chaplaincy, a Christian group made of individuals and several area churches. The Chaplaincy also provides Sievers with Christian materials, such as Bibles, to be used in his ministry at the jail. (Sievers Aff.) No other person at the jail supplies inmates with religious materials. The Chaplaincy conducts religious services each Thursday from 6:00 p.m. until 8:00 p.m.; each block has services every other week, and the attendance is voluntary. Due to a shortage of staff and the difficult logistics of transporting inmates to separate areas of the jail, no religious services are allowed during prisoner meal times. Sievers coordinates his ministry with the jail's superiors. (Herman Aff.)

On October 17, 2003, the Plaintiff submitted to Sievers an inmate request form in which he wrote: "I would like to know if you have an [sic] Koran and to participate in Romadawn [sic]. What date it start in this year?" (Df. Ex. B.) Sievers did not have any Korans but he called the local Imam and left a message requesting one for the Plaintiff. The Imam did not call back, and, on October 28, Sievers sent the Plaintiff's request form back to him with two words in its "disposition" section: "No Koran." (Df. Ex. B; Sievers Aff.)

On October 24, the Plaintiff sent another request to the Jail Commander Thomas Hathaway stating: "I was told by the chaplain that I had to obtain permission from you to participate in an

5

obligatory Isamic [sic] observance for the month of Romadawn [sic] and would like to request to have Jumal (Friday) prayer service at noon." (Df. Ex. C) Three days later, Hathaway responded: "you may participate in Ramadan—you may pray at any time, however there will be no prayer service. I will notify the kitchen—your meals will be sent up after sundown." (*Id.*)

> Sheriff Herman maintains that no religion is either given preference or suppressed at the jail:
>
> Inmates who wish to practice other religious activities or customs based upon their particular faith, including Hindu, Islam or the Jewish faith, for example, are allowed to contact their own religious leaders or ministers and those religious leaders or ministers are granted access to the Allen County Jail to minister their needs. Inmates can also contact the Allen County Jail Ministry Office and the Chaplains will attempt to contact their religious leader for them for visitation to administer to their needs. The religious services would be scheduled in accordance with the same consideration concerning jail security and other jail requirements for feeding prisoners, providing prisoners with access to sick call, recreation and other activities, as would be the case for Christian religious services.

(Herman Aff. 3)

The Plaintiff submits that the jail provides Christians with religious materials and allows them to have religious services, but denies the same accommodation for non-Christian faithful:

> I was informed by various jail personnel, to wit, Jail Commander Thomas Hathaway and Jail Chaplin Richard Sievers that the policy of the Allen County Jail did not provide for my religious requests. I was further informed that if I chose to attend/or participate in any religious services, or obtain any religious material, in [sic] would have to be that of the Christian Faith, which was I [sic] that was offered.

(Pf. Aff. 1–2) In addition, the Plaintiff states that, during discovery, he reviewed 2,800 inmate request forms seeking participation in religious activities and requesting religious literature. According to him, 100% of requests referencing Bibles and Christian services were granted but only 3% of requests concerning non-Christian issues were approved. The remaining 97% were summarily denied. (*Id.* at 2.)

### D. Section 1983 Standard

Section 1983 is not a source of substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996)).

A plaintiff may bring a § 1983 suit against individual officers in either their official or individual capacity or both. To establish a claim against an officer in his individual capacity, the plaintiff must show that the defendant was personally involved in depriving him of his constitutional rights. *See Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir. 1997); *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) (quoting *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994)). "[A]n official meets the 'personal involvement' requirement when she acts or fails to act 'with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.'" *Lane*, 22 F.3d at 1401.

An official-capacity suit is really just another way of suing the government. *See Sanville v. McCaughtry*, 266 F.3d 724, 732–33 (7th Cir. 2001). In such suit, the burden is on the plaintiff to show that the government's official policy or custom caused injury to him. *Id*. at 694. "A plaintiff . . . must establish a causal nexus between his injury and the municipality's alleged policy or custom." *Palmquist v. Selvik*, 111 F.3d 1332, 1344 (7th Cir. 1997); *see also Strauss v. City of Chi.*,

760 F.2d 765, 767 (7th Cir. 1985) ("Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present.").

> Unconstitutional policies or customs can take three forms:
> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003).

When the illegal practice is widespread, a policy maker's actual or constructive knowledge or acquiescence in the unconstitutional activity makes the city liable. *See, e.g., McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993). "The longstanding or widespread nature of a particular practice would support the inference that policymaking officials 'must have known about it but failed to stop it.'" *Id.*

Liability against the government may be based upon a single incident, if the incident is caused by a final policymaker. *See Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir.1994) ("It is true that a single act or decision of a final policymaker can establish municipal policy."). "Whether an officer has final policy making authority is a question of state law." *Garrison v. Burke*, 165 F.3d 565, 572 (7th Cir. 1999) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–84 (1986)).

**E. Plaintiff's Claims Against the Sheriff Herman in his Personal Capacity**

The parties do not dispute that Sheriff Herman acted under the color of state law. Therefore, in evaluating the Plaintiff's claims against Sheriff Herman in his individual capacity, the Court must decide only whether Sheriff Herman was personally involved in any of the alleged actions depriving

8

the Plaintiff of his right to practice religion.

He had no such involvement. Sheriff Herman never met the Plaintiff and he did not participate in or respond to the Plaintiff's requests for religious accommodations. His office is not at the jail and he rarely has contact with the inmates. No evidence exists that Sheriff Herman even knew of the Plaintiff's requests. Accordingly, the Plaintiff's claims against Sheriff Herman in his personal capacity must be dismissed. *See Palmer*, 327 F.3d at 594 (when a plaintiff is unable to show that a sheriff was personally involved in the decision allegedly amounting to a violation of constitutional rights, "we can dispose [the plaintiff's] claims against [the sheriff] in his individual capacity in short order").

**F.  Plaintiff's Claims Against Sheriff Herman in His Official Capacity**

The Plaintiff alleges that Sheriff Herman maintains a policy at the Allen County Jail not to provide non-Christian religious materials and not to allow non-Christian religious services. He testified in his affidavit that he was told by Jail Commander Hathaway and Chaplin Sievers that the jail's policy did not provide for his requests to be given a Koran and to hold a Jumu'ah service at noon on a Friday. Rather, he could participate only in Christian religious services and receive only Christian religious materials. The Plaintiff also submits that the jail granted 100% of inmate requests referencing Bibles and Christian services whereas it granted only 3% of inmate requests concerning non-Christian religious issues. He brings three claims against the jail: the First and Fourteenth Amendment claims and the claim under RLUIPA.

Sheriff Herman, on the contrary, insists that the jail accommodates all religions equally and that it is not even involved in providing religious materials or services for the inmates.

**(1)** *The Plaintiff's First Amendment and RLUIPA Claims*

To prevail on his claim First Amendment claims, the Plaintiff must show that the jail had a policy that prohibited his free exercise of religion without any legitimate penological purpose. *See Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) ("Under the First Amendment, prisoners retain a right to free exercise of religion, although that right is subject to legitimate penological demands of the state."). However, because the First Amendment does not require the accommodation of religious practice, *see Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006), the Plaintiff's best argument rests in RLUIPA, which expanded the prisoners' rights regarding the free exercise of religion. A prison regulation that survives scrutiny under the First Amendment may not survive scrutiny under RLUIPA. On the other hand, a prison regulation that survives scrutiny under RLUIPA will also survive scrutiny under the First Amendment.

Under this Act, if the Plaintiff is able to show that the jail's policies imposed a substantial burden upon his religious exercise, Sheriff Herman must demonstrate that the substantial burden was imposed (1) in furtherance of a compelling governmental interest and (2) was the least restrictive means of furthering that compelling governmental interest. § 2000cc-1(a). A regulation that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable" is one that can be deemed as imposing a substantial burden upon one's religious exercise. *Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 761 (7th Cir. 2003). "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

Construing the facts in a light most favorable to the Plaintiff, the Court assumes that the jail

maintained a policy not to provide him a Koran and not to allow him to hold a Jumu'ah service at noon on Fridays. In addition, the Court assumes that the Plaintiff would have been able to get Christian materials from Chaplain Sievers and participate in Christian services, if he chose to do so. But even under these assumptions, the Plaintiff is unable to show that the jail's policy of not providing a Koran imposed a substantial burden on his religious exercise.

Since a Koran was essential to the Plaintiff's religious exercise, by not having it, he was suffering a detriment to his religious exercise. Moreover, had the jail provided him a Koran, it would have alleviated this void in his practice of faith. But that is not to say that, by not giving him a Koran, the jail imposed any burden upon him. If the Plaintiff suffered a hardship, it was not one created by the jail. No evidence exists that the policy not to give him a Koran prohibited him from getting a Koran on his own. In fact, Chaplain Sievers tried to assist the Plaintiff by contacting the local Imam, who unfortunately did not respond. The Plaintiff's claim merely amounts to a demand that the jail provide him a Koran. Yet, neither the Constitution nor RLUIPA place any duty on jails to provide inmates with religious materials. *See Borzych*, 439 F.3d at 390 (the First Amendment does not require the accommodation of religious practice); *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.5 (2005) ("Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories."). Accordingly, the Court will grant summary judgment for the Defendant on the Plaintiff's RLUIPA claim related to his request for a Koran.

Conversely, the Plaintiff has shown that the jail's policy denying him a Jumu'ah service imposed a substantial burden upon his religious exercise of an obligatory Friday noon observance. As a result, the burden is upon Sheriff Herman to show that the policy furthered a compelling

governmental interest and that it was the least restrictive means of furthering that compelling governmental interest. *See O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003) (interpreting like elements under Religious Freedom Restoration Act). Although Sheriff Herman showed a compelling governmental interest of jail security for its policy against any religious services during meal times, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("[P]rison security is a compelling state interest, and . . . deference is due to institutional officials' expertise in this area."), he missed the opportunity to demonstrate that such policy was also the least restrictive means to achieve the security. Instead, Sheriff Herman resorted to the First Amendment standard, which is not applicable under RLUIPA. Accordingly, the Court will deny without prejudice summary judgment for the Defendant on the Plaintiff's RLUIPA claim regarding the Jumu'ah service, and will allow him to submit further evidence and legal argument on this point. *See Lax v. City of South Bend*, ___F.3d ___, 2006 WL 1479642 (7th Cir. 2006) (where the record is vague, the district judge may ask for more detail).

**(2)** ***The Plaintiff's Fourteenth Amendment Equal Protection Claims***

The Fourteenth Amendment requires that the governmental entities treat similar individuals similarly: "[no state shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Huebschen v. Dep't of Health and Soc. Serv.*, 716 F.2d 1167, 1171 (7th Cir. 1983).

The Plaintiff alleges that the jail arbitrarily treated him, a Muslim, differently than Christians

because its policy was not to give him a Koran, a holy article of Muslim faith, while providing Bibles to the Christian inmates. Again, as discussed above, there is a difference between the jail itself providing religious materials to the inmates and the jail allowing the inmates to receive such materials from outside sources. To survive summary judgment under the Fourteenth Amendment equal protection clause, the Plaintiff must present evidence that the jail did not give him a Koran when he asked for it but that the same jail did provide Christian materials. That is, he must show that the jail treated similar persons differently—here, persons wanting to exercise their faith—by supplying religious materials to one group but not to the other. Instead, the evidence shows that Christian materials were given to the inmates by the Allen County Chaplaincy through Chaplain Sievers, not by the jail. Unless Chaplain Sievers acted under color of law (and thus on behalf of the jail), when he furnished Christian materials to the inmates, the Plaintiff's equal protection claim fails because he is unable to show that the jail treated him differently than the Christian inmates.

Neither party discussed whether Chaplain Sievers was acting under color of law when he provided religious materials to the inmates, and the circuits provide no unanimous answer. *See Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir.1997) ("In sum, we conclude that a prison chaplain, even if a full-time state employee, is not a state actor when he engages in inherently ecclesiastical functions (that is, when he performs spiritual duties as a leader in his church."); *Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir. 1992) (finding a prison chaplain to be a state actor, who was "distinguished from guests and visitors by being given privileges granted only to [prison's] employees, including special training and an institutional identification card"). Therefore, the Court will deny without prejudice summary judgment for the Defendant on the Plaintiff's equal protection claim regarding the request for a Koran and will give parties the opportunity to submit additional

evidence and argument regarding this issue.

On the other hand, the Court will grant summary judgment for the Defendant on the Plaintiff's equal protection claim regarding Jumu'ah service. The Plaintiff wanted Jumu'ah service at noon, during a meal time. Sheriff Herman sufficiently demonstrated that, for security reasons, the jail does not allow any group to hold religious services at noon (Christian services take place on Thursdays from 6 p.m. until 8 p.m.). The Plaintiff has not presented any evidence to the contrary. Accordingly, he has not demonstrated that he was treated differently than anyone belonging to a different religion, so as to even invoke the equal protection analysis.

## CONCLUSION

Since the Plaintiff's claims for violation of the First Amendment free exercise of religion clause are subsumed under RLUIPA, 42 U.S.C. § 2000cc-1, the Court dismisses his First Amendment Claims.

The Court grants summary judgment for the Defendant on the Plaintiff's RLUIPA claim regarding his request for a Koran and grants summary judgment for the Defendant on the Plaintiff's Fourteenth Amendment equal protection claim regarding his request for a Jumu'ah service.

The Court denies without prejudice summary judgment for the Defendant on the Plaintiff's RLUIPA claim regarding his request for a Jumu'ah service and the Plaintiff's Fourteenth Amendment equal protection clause claim regarding his request for a Koran.

**As directed by the discussion above**, the parties may supplement their briefs on the **two remaining claims** according to the following schedule: Sheriff Herman may submit his brief by **July 10, 2006;** the Plaintiff may submit his Response by **July 31, 2006;** and Sheriff Herman may

reply no later than **August 11, 2006.** No brief should exceed **eight pages**, and the parties **need not repeat** any facts already set out in their submissions.

SO ORDERED on June 21, 2006.

                                                            S/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT