UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GREGORY L. ELEY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:04-CV-416-TS |
| | ) | |
| JAMES HERMAN, in his official capacity | ) | |
| as the SHERIFF OF ALLEN COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This is the second part of the Court's decision regarding the Defendant's Motion for Summary Judgment [DE 85]. The Court had already ruled on some of the Plaintiff's claims [DE 102], but requested that the parties submit additional briefs on the others. In addition, the Court held an oral argument on the remaining claims, and now is ready to rule on them.

**A.   Background**

The pro se Plaintiff, Gregory L. Eley, was a federal pretrial detainee at the Allen County jail. During his incarceration, the jail refused his request for a Jumu'ah[1] service and did not provide him a Koran when requested. As a result, the Plaintiff sued Sheriff James Herman and various other defendants, alleging violations of the laws and Constitution of the United States. In the end, the Plaintiff has been allowed to bring claims only against Sheriff Herman, in his personal and official capacity, for alleged violations of the First Amendment free exercise of

---

[1] Jumu'ah is an obligatory Islamic congregational prayer that includes a sermon and is held on Fridays around midday. At the oral argument hearing, the Plaintiff specified that the prayer can be conducted between noon and three o'clock in the afternoon.

religion clause, the Fourteenth Amendment equal protection clause, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.

In its previous Opinion and Order, the Court dismissed the Plaintiff's claims against Sheriff Herman in his personal capacity [DE 102]. Also, the Court granted summary judgment to Sheriff Herman on the Plaintiff's First Amendment claim, the Plaintiff's RLUIPA claim regarding his request for a Koran, and on the Plaintiff's Fourteenth Amendment equal protection claim regarding his request for a Jumu'ah service. However, the Court denied without prejudice summary judgment for Sheriff Herman on the Plaintiff's RLUIPA claim regarding the Plaintiff's request for a Jumu'ah service and the Plaintiff's Fourteenth Amendment equal protection clause claim regarding his request for a Koran.

**B.   Facts**

The Court will restate the facts set out in the previous Opinion and Order [DE 102] and will supplement them with the additional evidence submitted by the parties.

The Plaintiff, a Muslim from birth, was a federal pretrial detainee held from August 2003 until October 2003 at the Allen County Jail. The parties disagree where the Plaintiff was housed within the jail: the Plaintiff insists that he was placed in the federal detainee block, where he was entitled to the same jail privileges as the other Allen County Jail inmates; the Defendant maintains that he was in the L Block, in protective custody, segregated from the general population of the jail, spending all but one hour a day in an assigned cell.

James Herman was Allen County's Sheriff. In this position, he was in charge of the Allen

County Jail and was responsible for establishing and enforcing the policies at the jail.

Richard Sievers was the jail's chaplain. Sievers was not employed by the jail but received his salary from the Allen County Jail Chaplaincy, a Christian group made of individuals and several area churches. Sievers coordinated his ministry with the jail's superiors.

The Chaplaincy also provided Sievers with ministry materials, such as Bibles and books of both religious and secular nature, to be used at the jail. These materials were donated by private citizens. Inmates could request books, including Bibles, from Sievers and he would provide them. Besides Sievers, no other person at the jail supplied inmates with religious materials.

The Chaplaincy conducted Christian services each Thursday from 6:00 p.m. until 8:00 p.m.; each block had services every other week and attendance was voluntary. The Allen County Jail Ministry Manual explains some of the procedures for church services:

> PROCEDURES
> A.   Church Services
> . . .
>     3.   Services for inmates in A, B, C, and D blocks will be held in the classrooms off of these blocks.
>     4.   Services for H&K blocks will be held in the 3rd floor elevator lobby area
>     5.   Services for E&W blocks will be held in their activity area
>     6.   Services for F&G (maximum security) blocks will be held in their activity areas with inmates remaining locked in their cells with the food hatches opened if they wish to participate in services
>         a.   If the inmates in F&G blocks are not on restricted activity, the service may be held in the activity area
>     7.   Order and respect will prevail during church service

(Supp. Ex. B at 2; DE 109.)

The jail did not allow religious services during prisoner meal times.

On October 17, 2003, the Plaintiff submitted to Sievers an inmate request form in which

3

he wrote: "I would like to know if you have an [sic] Koran and to participate in Romadawn [sic]. What date it start in this year?" (Df. Ex. B.) Sievers did not have any Korans available but he called the local Imam and left a message requesting one for the Plaintiff. The Imam did not call back, and, on October 28, Sievers sent the Plaintiff's request form back to him with two words in its "disposition" section: "No Koran." (Df. Ex. B; Sievers Aff.)

On October 24, the Plaintiff sent another request to Jail Commander Thomas Hathaway stating: "I was told by the chaplain that I had to obtain permission from you to participate in an obligatory Isamic [sic] observance for the month of Romadawn [sic] and would like to request to have Jumal (Friday) prayer service at noon." (Df. Ex. C) Three days later, Hathaway responded: "you may participate in Ramadan—you may pray at any time, however there will be no prayer service. I will notify the kitchen—your meals will be sent up after sundown." (*Id*.)

Sheriff Herman maintains that no religion was either given preference or suppressed at the jail:

> Inmates who wish to practice other religious activities or customs based upon their particular faith, including Hindu, Islam or the Jewish faith, for example, are allowed to contact their own religious leaders or ministers and those religious leaders or ministers are granted access to the Allen County Jail to minister their needs. Inmates can also contact the Allen County Jail Ministry Office and the Chaplains will attempt to contact their religious leader for them for visitation to administer to their needs. The religious services would be scheduled in accordance with the same consideration concerning jail security and other jail requirements for feeding prisoners, providing prisoners with access to sick call, recreation and other activities, as would be the case for Christian religious services.

(Herman Aff. 3.)

The Plaintiff submits that the jail provided Christians with religious materials and allowed them to have religious services, but denied the same accommodation for non-Christian

4

faithful:

> I was informed by various jail personnel, to wit, Jail Commander Thomas Hathaway and Jail Chaplin Richard Sievers that the policy of the Allen County Jail did not provide for my religious requests. I was further informed that if I chose to attend/or participate in any religious services, or obtain any religious material, in [sic] would have to be that of the Christian Faith, which was I [sic] that was offered.

(Pf. Aff. 1–2.) In addition, the Plaintiff states that, during discovery, he reviewed 2,800 inmate request forms seeking participation in religious activities and requesting religious literature. According to him, 100% of requests referencing Bibles and Christian services were granted but only 3% of requests concerning non-Christian issues were approved. The remaining 97% were summarily denied. (*Id.* at 2.)

### C.  Discussion

Two issues remain in this case: (1) Did the Defendant's refusal to allow the Plaintiff Jumu'ah service at noon, on Fridays, violate RLUIPA? (2) Did Chaplain Sievers's failure to procure a Koran for the Plaintiff amount to a violation of the Fourteenth Amendment equal protection clause? The Court will address these questions in turn.

**(1)  *RLUIPA Claim***

Under RLUIPA, if the Plaintiff is able to show that the jail's policies imposed a substantial burden upon his religious exercise, the Defendant must demonstrate that the substantial burden was imposed (1) in furtherance of a compelling governmental interest and (2) was the least restrictive means of furthering that compelling governmental interest. § 2000cc-1(a). A regulation that "necessarily bears direct, primary, and fundamental responsibility

5

for rendering religious exercise . . . effectively impracticable" is one that can be deemed as imposing a substantial burden upon one's religious exercise. *Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752, 761 (7th Cir. 2003). "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

The sincerity of the Plaintiff's faith is not at issue. The Plaintiff submitted evidence that the celebration of Jumu'ah is central to his religious exercise and that the service must take place between noon and three o'clock on Fridays. In addition, the Plaintiff named other Muslim inmates housed in his block who expressed interest in participating in a Jumu'ah service if it was permitted at the jail. Therefore, although the jail allowed the Plaintiff to exercise his religion privately within the confines of his cell, by completely prohibiting Jumu'ah service, the Defendant made the Plaintiff's religious exercise effectively impracticable. Commander Hathaway's note to the Plaintiff—"you may pray at any time, however there will be no prayer service"—rejected the notion that the Allen County Jail would ever allow a communal Muslim worship.

Having imposed a substantial hardship upon the Plaintiff's religious exercise, the Defendant bears the burden of demonstrating, not just asserting, that the hardship was applied through the least restrictive means in furtherance of a compelling governmental interest. *See O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003) (interpreting like element under Religious Freedom Restoration Act). The Court evaluates the Defendant's explanation under strict scrutiny but pays special deference to its expertise in managing the jail. *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 987 (8th Cir. 2004) (enbanc) ("Although the

legislative history is brief, several factors cause us to conclude that Congress intended that the language of the act is to be applied just as it was under RFRA," that is contextually); *cf. Vision Church v. Village of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006) (RLUIPA provide[s] that, if a facially-neutral law or land use regulation imposes a substantial burden on religion, it is subject to strict scrutiny.") (addressing a parallel statute, 42 U.S.C. § 2000cc(a)(1), prohibiting government's unjustified imposition of substantial burden upon a person's religious exercise).

In the previous Opinion and Order, the Court noted that the Defendant's cited compelling governmental interest—jail security—was a valid reason for curbing the Plaintiff's religious exercise. However, as the parties omitted to discuss whether the Defendant's outright prohibition was also the least restrictive means for furthering that interest, the Court allowed them to brief and orally argue this issue. The Defendant failed to show that the complete prohibition of Jumu'ah was the least restrictive means to further the security of the jail.

Since the Defendant claims that prohibiting Jumu'ah for the sake of the jail's security was the least restrictive means, it must clearly establish that anything but the total prohibition of public Muslim worship would threaten the order at the jail. That is, the Defendant must show that the services could not be held at any other time, or that the jail could not reallocate any of its guards, or that the prisoners wishing to participate could not be contained to their own blocks, etc.

The Defendant only asserts that allowing a Jumu'ah service at noon, when the prisoners eat their lunches, would create logistical and security problems in transporting the inmates to separate areas of the jail. The Defendant does not explain whether it considered and rejected other ways to accommodate the Plaintiff's religious exercise. Moreover, while the Plaintiff listed

7

some alternatives to the total prohibition of Jumu'ah, the Defendant did not address them.[2] The Defendant's failure to support its contention that it used the least restrictive means in curbing the Plaintiff's religious exercise dooms its argument.

Therefore, although the Court gives "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources," *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (citation omitted), it finds no facts even suggesting that without complete prohibition of Jumu'ah, the security of the jail would have been jeopardized. "Where a prisoner challenges the prison's justifications, prison officials must set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Perez v. Frank*, 2007 WL 1101285, *13 (W.D. Wis. April 11, 2007) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 1000 (9th Cir. 2005); *Murphy*, 372 F.3d at 988–89 ("We acknowledge that MDOC has a compelling interest in institutional security. Nevertheless, it must do more than merely assert a security concern. Although we give prison officials 'wide latitude within which to make appropriate limitations' they 'must do more than offer conclusory statements and post hoc rationalizations for their conduct.'") (citations omitted). The Defendant provided no such evidence.

In addition, the Defendant wrongly assumes that allowing Jumu'ah service would

---

[2]The Plaintiff lists the following alternatives to the complete prohibition of Jumu'ah:
1. Jumu'ah group worship of similarly classified inmates within the blocks "activity room,"
2. Jumu'ah group worship of similarly classified inmates in designated exercise area,
3. Jumu'ah group worship of similarly classified inmates held after the noon time meal time feeding of inmates, or
4. Group worship while locked within the cells with the food hatch open.

(Pf. Sup. Br. at 4; DE 108.)

necessarily require the mingling of the inmates housed in separate blocks with differing levels of segregation. It states:

> Placing all inmates who request Jumu'ah service in one group for a community religious service gathering would mingle administrative segregation, protective custody, and general population inmates. This would present a very significant risk to Jail security and would also undermine the goals of administrative segregation to maintain the security and good order of the Jail. [The Commander] has testified that protective custody inmates should be kept separate from the other general population and that allowing those inmates to be participating in the Christian religious services, for example, would present a serious risk to the personal well being and compromise Jail security. The Jail policy does not permit this type of inmate to participate in the Christian group religious services, and the same consideration would apply to a Muslim worshiper.

(Def. Sup. Br. at 3–4; DE 105-1.) This argument ignores the fact that the Plaintiff did not request a Jumu'ah in which all interested inmates at the jail celebrate at once. The Plaintiff's supplemental brief makes clear that he would not have objected to the service in which only similarly classified inmates could participate. (*See* Pf. Sup. Br. at 4; DE 108.) The Defendant has not shown that there was an impediment for such reserved services. After all, the current practice at the jail for other religious celebrations is to circulate the services from block to block so as not to mingle inmates from different classifications.

Likewise, even if the Plaintiff was confined in the protective custody of the L Block, the Defendant has not explained why the outright ban of Jumu'ah was necessary as opposed to a less restrictive means of securing the jail. No evidence exists that the L Block inmates posed a danger to each other so that Jumu'ah could not have been offered there. Moreover, even assuming that they did pose a danger to each other, the Defendant has not explained why Jumu'ah could not be conducted, as Christian services were conducted in maximum security blocks F&G, with food hatches open for inmate participation. Again, while the Court is ready to "accord 'due deference

to the experience and expertise of prison and jail administrators,'" *Cutter*, 544 U.S. at 710, the Defendant has not supplied any evidence upon which the Court could base its deference. Thus, the Defendant has failed its burden to show that the outright prohibition of Jumu'ah was the least restrictive means to keep the jail safe and orderly, and the Plaintiff will be allowed to advance his claim for damages, if any, under RLUIPA.

**(2)     *The Fourteenth Amendment Equal Protection Clause Claim.***

The Fourteenth Amendment requires that governmental entities treat similar individuals similarly: "[no state shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Huebschen v. Dep't of Health and Soc. Serv.*, 716 F.2d 1167, 1171 (7th Cir. 1983).

The Plaintiff alleges that the jail, through Chaplain Sievers, provided to the inmates Bibles but not Korans, in violation of the Fourteenth Amendment equal protection clause. In its last Opinion and Order, the Court directed the parties to further argue on whether Sievers was a state actor, which would then determine if the jail is even implicated in his distribution of religious materials. The parties have done so. However, because of the additional evidence submitted, the Court is convinced that Sievers's status at the jail is immaterial to the outcome of this claim.

The evidence shows that Bibles, along with other books, were available to the inmates through private donations to the Chaplaincy. The jail itself did not procure the books and it had

10

not obligation to do so. *See Cutter*, 544 U.S. at 720 n.8 ("Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories.") (citing *Charles v. Verhagen*, 348 F.3d 601, 605 (7th Cir. 2003) (overturning prohibition on possession of Islamic prayer oil but leaving inmate-plaintiff with responsibility for purchasing the oil)). The inmates had access only to those materials that were supplied by people of good will. Hence, inmates who requested Bibles were given them just as they would have been given any other available books. As no Korans have been donated, Sievers could not provide one to the Plaintiff. Nevertheless, Sievers took the extra step and called a local Imam requesting the holy book of Islam, but to no avail. Under these circumstances, even if Sievers was a state actor, the Plaintiff cannot show that the jail treated similar persons differently so as to implicate the Fourteenth Amendment. The Plaintiff was not similarly situated to the inmates who requested Bibles because no Korans had been donated. In the absence of this commonality, the Court must grant summary judgment for the Defendant as to the Plaintiff's Fourteenth Amendment equal protection clause claim.

### C.     Conclusion

The Court grants in part and denies in part the Defendant's motion for summary judgment [DE 85]. Mindful of the deference it must pay to the jail's expertise in managing the inmates, the Court has given the parties two opportunities, in addition to their original briefs, to address the question of whether the Defendant used the least restrictive means in curbing the Plaintiff's rights to religious exercise under RLUIPA. The Court has thoroughly reviewed the record but neither the Defendant's additional brief nor its oral argument supplied the Court with

11

a basis to justify a complete prohibition of Friday Jumu'ah services at the jail. In enacting RLUIPA, the Congress saw fit to give the inmates, housed in prisons and jails receiving federal money, the protections greater than those in the First Amendment. The Court's role is to apply the law as written, and in this case, the law places a burden upon the Defendant to show that the prohibition of Jumu'ah service at the Allen County Jail was the least restrictive means to further a compelling governmental interest. The Defendant has failed to make this showing, warranting a denial of its motion for summary judgment as to the Plaintiff's RLUIPA claim regarding his inability to celebrate Jumu'ah at the Allen County Jail. The Court having determined that the Plaintiff's RLUIPA rights were violated, the only remaining question is damages, if any. The Plaintiff previously requested a jury trial, so a jury will consider that issue.

The Plaintiff's other claims are dismissed.

The Court sets a telephonic scheduling conference for June 18, 2007, at 1:30 pm., EST.

SO ORDERED on June 8, 2007.

       S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT